# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

BHAKTAVATSALA R. APURI. M.D.,     )
                                       )
        Plaintiff,                  )
                                       )
        v.                          )        CAUSE NO.: 1:16-CV-363-TLS
                                       )
PARKVIEW HEALTH SYSTEMS, INC.,   )
PARKVIEW HOSPITAL, INC., and      )
ROY ROBERTSON, M.D.,           )
                                       )
        Defendants.              )

## OPINION AND ORDER

The Plaintiff, after his privileges at Parkview Hospital were not renewed, sued Parkview, alleging race discrimination under 42 U.S.C. § 1981 and state law claims relating to the non-renewal of his privileges. He also sued Dr. Roy Robertson for intentional interference with a business relationship for the role Dr. Robertson had in the peer review process, which the Plaintiff contends led to a tainted and biased review. Currently before the Court is the Defendants' Motion for Summary Judgment [ECF No. 70]. The Plaintiff responded to the Defendants' Motion [ECF No. 83], and the Defendants replied [ECF No. 89]. The Defendants have also filed a Rule 56 Motion to Strike a portion of the Plaintiff's response to the Summary Judgment Motion [ECF No. 87], to which the Plaintiff responded [ECF No. 91], and the Defendants replied [ECF No. 93]. Finally, in connection with the Motion to Strike, the Plaintiff has filed a Motion for Leave to File and Disclose an Additional Expert Witness, and Amend his Expert Disclosure [ECF No. 92], to which the Defendants have responded [ECF No. 94], and the Plaintiff has replied [ECF No. 95].

## FACTUAL BACKGROUND

The Plaintiff is a cardiologist of Indian descent. In 2009, Defendant Robertson referred to a patient he shared with the Plaintiff as "that black guy." Later, sometime in 2010 or 2011, the Plaintiff and Defendant Robertson had a disagreement, during which Defendant Robertson verbally attacked the Plaintiff, saying at one point, "this is the beginning of your end in this town."

In 2012, Defendant Parkview Hospital began receiving reports of concerns about the Plaintiff, including his failure to return pages and phone calls, poor communication with nursing staff, and failure to conduct rounds in a timely fashion. The Plaintiff met with the Chief Medical Officer and Director of Nursing, and the Plaintiff formed a plan to address the issues. However, in February 2013, there were additional reports of late rounding and tardiness in patient documentation. These reports, and additional issues with patient care such as possible abandonment of a patient, led to the decision that the Plaintiff would be placed on 100% chart review.

On May 16, 2013, at the Medical Staff Officers' Meeting, the Chief Medical Officer presented the issues regarding the Plaintiff's patient care, availability, and responsiveness, and Dr. Robertson provided documentation and performance concerns. Following this meeting, an inquiry body was appointed to determine next steps. The inquiry body investigated and recommended that (1) the Plaintiff submit to evaluation to help him improve his practice management, and (2) continue with 100% chart review. The Medicine Division Leadership Committee adopted the recommendations of the inquiry body, and issued a letter on October 9, 2013, describing the conditions and the consequences of noncompliance to the Plaintiff.

However, continued reports of quality issues continued after the letter. For example, on July 26, 2014, the Plaintiff could not be reached by pager to care for one of his patients. Additionally, the Plaintiff continued to conduct rounds in an untimely fashion.

On October 15, 2014, the Medical Staff Executive Committee denied the Plaintiff's application to renew medical privileges with Defendant Parkview Hospital, Inc. Upon notice, the Plaintiff requested an appeal of the decision, and Defendant Parkview Hospital, Inc. provided an Ad Hoc Committee hearing.

The hearing was held on February 24, 2015. The Plaintiff attended, represented by counsel, and presented evidence that his patient outcomes were better than other cardiologists' outcomes, as demonstrated by mortality rates. Defendant Parkview Hospital, Inc., presented evidence supporting their recommendation that the Plaintiff's privileges be terminated. Both sides presented and cross-examined witnesses; however, Defendant Robertson was not one of the witnesses presented.

The Ad Hoc Committee recommended upholding the decision not to renew the Plaintiff's medical privileges. In its written recommendation, the Ad Hoc Committee details the Plaintiff's issues with rounding and communication in a timely fashion, and the Committee cites these issues as part of the conclusion that the Plaintiff's professional and clinical judgment had put patients at risk, and had been below Defendant Parkview Hospital, Inc.'s standards. The Plaintiff appealed to the Board of Directors, but on July 23, 2015, after another opportunity to present information both in writing and orally, the final decision that the Plaintiff's privileges would not be renewed was issued.

## STANDARD OF REVIEW

Summary judgment is proper where the evidence of record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to "go beyond the pleadings" to cite evidence of a genuine factual dispute precluding summary judgment. *Id.* at 324. "[A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in its favor on a material issue, then the Court must enter summary judgment against it. *Id.*

## ANALYSIS

### A.     Race Discrimination Under § 1981[1]

"Section 1981 bars employers from discriminating and retaliating against employees based on the employee's race or national origin." *Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 805 (7th Cir. 2014) (citing *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 n.4 (7th Cir. 2006)).

---

[1] The parties briefed the issue of whether Parkview Health System, Inc. is a proper party to this action. As the issue does not affect the Court's conclusion, it is not discussed here; to the extent that Parkview Health Systems, Inc., was a proper Defendant, the same analysis articulated below would apply equally to Parkview Health Systems, Inc. as it does to Parkview Hospital, Inc. Additionally, the Plaintiff does not make any separate argument about his § 1981 claim against Defendant Robertson. To the extent such a separate argument could have been made, it would have failed for the same reasons his argument against Defendant Parkview Hospital, Inc., does: namely, the Plaintiff has not presented evidence of any race-based animus on the part of Defendant Robertson.

Section 1981 can be violated only by purposeful discrimination. *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982). Section 1981 requires a "but for" causation analysis. Where a plaintiff alleges that race was only one factor in an adverse employment action, he can find no relief under § 1981. *See Smith v. Wilson*, 705 F.3d 674 (7th Cir. 2013) ("[W]e cannot import the authorization of partial 'motivating factor' relief found in § 2000e–2(m) into entirely different statutes" including § 1981 because "[a]bsent explicit statutory authorization . . . the district courts are powerless to give such relief.") (citing *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957 (7th Cir. 2010)). Otherwise, the "substantive standards and methods of proof that apply to Title VII race discrimination and retaliation claims also apply to [a plaintiff's] claims under 42 U.S.C. § 1981." *Liu v. Cook Cty.*, 817 F.3d 307, 315 (7th Cir. 2016) (citing *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012))

Discrimination claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a court should assess the case in those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced). When the plaintiff does not present his argument in opposition to summary judgment in those terms, the direct method of proof is the "default rule." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 880 (7th Cir. 2016) (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013)). Under that method, the test is "whether the evidence would permit a reasonable factfinder to

conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [adverse action]." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (setting out the standard for avoiding summary judgment on discrimination claim under the direct method of proof). In all cases, the question at summary judgment remains: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David*, 846 F.3d at 224; *see also Liu*, 817 F.3d at 315 ("The proper question under either method is simply whether a reasonable trier of fact could infer retaliation or discrimination."); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) ("[T]he fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination.").

Here, the Plaintiff has presented his evidence in the context of the burden-shifting framework. *See Pl.'s Resp.*, ECF No. 83, p. 18. Thus, the Plaintiff must establish: "(1) he is a member of a protected class; (2) he performed his job to his employer's expectations; (3) he suffered an adverse employment action; and (4) one or more similarly situated individuals outside his protected class received better treatment." *Ferrill*, 860 F.3d at 500 (quoting *McDonnell Douglas*, 411 U.S. at 793). "If the plaintiff makes this prima facie showing, the burden shifts to the employer to come forward with a legitimate, nondiscriminatory reason for the challenged employment action. . . . If the employer does this, then the burden shifts back to the plaintiff to produce evidence establishing a genuine dispute of fact about whether the employer's reason was a pretext for discrimination. 'Pretext' is more than a mere mistake; it 'means a lie'—a 'phony reason' for the employment action." *Id.* (citing *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015)).

The Plaintiff has not established the second element of his prima facie case. The Plaintiff argues that, because he had some of the lowest mortality rates of physicians at Parkview, he must therefore have been qualified to hold medical privileges. However, the Defendants decided not to renew the Plaintiff's hospital privileges at least in part because of issues unrelated to the Plaintiff's medical outcomes, including conducting rounds late at night and communication issues with nursing staff and Emergency Room personnel. The Plaintiff has not disputed the fact of his continued problems in these areas. The Plaintiff also does not contest the legitimacy of the standards to which the Defendant held him.

The Plaintiff's argument as to the fourth element suffers from a similar problem. The Plaintiff presents evidence that he was a superior cardiologist, based on record outcomes from procedures performed by Caucasian cardiologists, whom the Plaintiff maintains did not lose their medical privileges as he did. However, the Plaintiff is again failing to respond to the Defendant's articulated reasons for the termination of his medical privileges: the Plaintiff had documented problems with timely rounding and availability during call. Thus, the doctors the Plaintiff identifies are not valid comparators, because they did not have the same problems in performance.[2] *See Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 703 (7th Cir. 2012) ("The purpose of the 'similarly-situated' comparator is to ensure that all other variables are discounted so that discrimination can be inferred."). Because he has not presented evidence regarding instances of comparable misconduct, the Plaintiff cannot claim that he "engaged in similar conduct, but nonetheless received disparate treatment for no apparent legitimate reason." *Adams*

---

[2] Defendants' Motion to Strike, and the Plaintiff's Motion for Leave to File and Disclose an Additional Expert Witness, both primarily address the Plaintiff's Affidavit regarding these other doctors' medical outcomes. As those issues are not relevant to the Court's analysis, the Motions will be denied as moot.

*v. Wal–Mart Stores, Inc.*, 324 F.3d 935, 939–40 (7th Cir. 2003); *see also Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 507 (7th Cir. 2017) (stating that the similarly situated comparator must have "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them") (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008))

As he has not met the second or fourth elements, the Plaintiff has not made his prima facie case, and his § 1981 claim fails as a matter of law. The Plaintiff's mortality rates may be relevant to his value as a cardiologist, but the Defendants are permitted to set expectations around medical care beyond just patient outcomes. *See Fane v. Locke Reynolds LLP*, 480 F.3d 534, 540 (7th Cir. 2007) (holding that failing to meet expectations regarding employee conduct was a failure to meet legitimate expectations, even if the employee was completing the tasks of the job satisfactorily) (citing *Herron v. Daimler Chrysler Corp.*, 388 F.3d 293, 300 (7th Cir. 2004)); *see also Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) ("The federal courts are not a super-personnel department that second-guesses facially legitimate employer policies.").

Even if the Plaintiff had established a prima facie case, the Plaintiff has not established that the Defendants' stated reason is pretextual. The Plaintiff cites the Defendants' knowledge of Defendant Robertson's animus, its violation of the Medical Staff Bylaws, his mortality rates, and his approval for medical privileges at Parkview LaGrange Hospital as evidence that the Defendants' stated reason is pretext.

However, none of this evidence contradicts the Defendants' stated reason, let alone establishes a racial bias underneath it. While Defendant Robertson may have disliked the Plaintiff, the Plaintiff has presented no evidence that such dislike was racially based, except for a

single comment about a shared patient, made at least two years before the relevant events, who was not even in the Plaintiff's protected class. *See Egonmwan v. Cook Cty. Sheriff's Dep't*, 602 F.3d 845, 850 (7th Cir. 2010) (noting that for a comment to be evidence of discriminatory motivation it must have been made by the decisionmaker around the time of the decision and in reference to the adverse employment action). Additionally, even if the Plaintiff had established Defendant Robertson's dislike was race-motivated, which he has not, Defendant Robertson's tangential involvement in only the first stage of the Defendants' investigation is not enough to establish that race was a "but-for" factor in the Plaintiff's loss of privileges. *See Woods v. City of Berwyn*, 803 F.3d 865, 870 (7th Cir. 2015) (noting that an independent determination that the adverse action is justified can break the causal chain required for a cat's paw theory of liability, citing *Staub v. Proctor Hosp.*, 562 U.S. 411, 419, 421 (2011)).

The Plaintiff presented no evidence linking his allegations of violations of the Medical Staff Bylaws to race, and as detailed above, the mortality rates do not establish that the Plaintiff was treated any worse than non-Indian doctors with respect to the issues relevant to the Defendants' stated reason for his loss of medical privileges. Finally, while the Defendants do not dispute that the Plaintiff had a different outcome regarding privileges at Parkview LaGrange Hospital, the Defendants offer an explanation: the entities have separate processes to award privileges, and LaGrange Hospital did not believe that the Plaintiff's issues would appear at that hospital, not least because the Plaintiff does not actually admit patients at LaGrange, and so rounding and responding to calls regarding patients are non-issues.

The Plaintiff has not presented any evidence that the Defendants would not have terminated his medical privileges but for his race. Even in the briefing, the Plaintiff states that the

difference between his outcomes at Parkview LaGrange Hospital and Parkview Hospital, Inc. may have been either "Dr. Robertson's animus towards [him]" or "Dr. Robertson's mistreatment of [him] due to his race." If even the Plaintiff offers two possible explanations, one of which is not related to race, the Plaintiff cannot have met the but-for standard required for § 1981 claims. *See Serafinn v. Local 722, Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 597 F.3d 908, 915 (7th Cir. 2010) ("Mixed-motive theories of liability are always improper in suits brought under statutes without language comparable to the Civil Rights Act's authorization of claims that an improper consideration was '*a motivating factor*' for the contested action.") (citing *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 n.3 (1993)) (emphasis in original).

Even if the Plaintiff could have made a prima facie case for race discrimination, he would not have been able to establish pretext. The Defendants' Motion for Summary Judgment as to the Plaintiff's § 1981 claim is GRANTED.


**B.      The Plaintiff's Additional Claims**

The Plaintiff also brought several state-law claims against the Defendants, which are before this Court on supplemental jurisdiction. The Court "may decline to exercise supplemental jurisdiction" over state-law claims if the Court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Although the decision is discretionary, when all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (internal quotations omitted);

*see also Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994); *see also Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (noting that established law of this circuit is that the "usual practice" is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed before trial). "[T]he principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) (citing *Groce*, 193 F.3d at 501).

Considering judicial economy, convenience, fairness, and comity, *see Wright*, 29 F.3d at 1251, this Court does not find a basis to retain jurisdiction of the case. *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 615 (7th Cir. 2007) (noting that "the court must choose the course that best serves the principles of economy, convenience, fairness and comity which underlie the pendent jurisdiction doctrine…") (internal citations and quotations omitted). While judicial economy might argue in favor of the Court resolving the remaining state law claims, as discovery has been conducted and the issues have been briefed, the Court concludes that state court is the appropriate forum to resolve the remaining issues.

First, the Plaintiff appears to have asserted a claim for "wrongful non-renewal of medical privileges" as a separate claim from breach of contract or intentional interference with a business relationship. An Indiana court is the correct forum to determine the elements of such a claim, if one exists; that issue is not before this Court. Second, as the Defendants footnote in their briefing, it might have been more appropriate for the Plaintiff to assert a claim for tortious

11

interference with a contract rather than a business relationship. *See Defs.' Mem*. ECF No. 71, p. 10 n.8. The distinction between two kinds of torts, defined in state law, is also more appropriately determined in state court. Finally, in determining the § 1981 claim, the Court did not determine a dispositive issue of any of the state court claims. Weighing all of these issues, and recognizing that the parties may be able to stipulate to the discovery already conducted, the Court declines to exercise its supplement jurisdiction on these issues just because of the resources already invested.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Defendants' Motion for Summary Judgment as to the Plaintiff's § 1981 claim [ECF No. 70]. The Court DENIES AS MOOT the Defendants' Motion to Strike [ECF No. 87] and the Plaintiff's Motion for Leave to File and Disclose an Additional Expert Witness, and Amend his Expert Disclosure [ECF No. 92]. The Plaintiff's remaining claims are DISMISSED WITHOUT PREJUDICE. The Court DIRECTS that the Clerk enter judgment in favor of the Defendants and against the Plaintiff on Count I of the First Amended Complaint.

SO ORDERED on March 27, 2019.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT