UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BHALTAVATSALA R. APURI, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:16-CV-363-HAB |
| ) | |
| PARKVIEW HEALTH SYSTEM, INC. ) | |
| PARKVIEW HOSPITAL, INC. ) | |
| and ROY ROBERTSON, M.D., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Petition for Defense Costs and Attorney Fees (ECF No. 98) and supporting Memorandum (ECF No. 99), filed on April 10, 2019. In their Motion, Defendants ask this Court for deposition transcript costs and attorney's fees by virtue of their claimed status as prevailing parties in this case. Plaintiff filed his Response in Opposition (ECF No. 100) on April 24, 2019. After being granted several extensions, Defendants filed their Reply (ECF No. 111) on October 7, 2019. Defendant's Petition is now ripe for review.

**A.    Procedural Background**

Plaintiff filed his Complaint and Jury Demand (ECF No. 1) on October 14, 2016, and a First Amended Complaint (ECF No. 25) on May 18, 2017. Generally, Plaintiff alleged that his privileges at Defendants' hospital were not renewed due to racial discrimination. The Complaints alleged four causes of action: (1) a violation of 42 U.S.C. § 1981; (2) Non-Renewal of Privileges; (3) Breach of Contract; and (4) Intentional Interference with Business Relationship. The final three causes of action were brought under Indiana state law.

Although discovery closed on December 1, 2017, several discovery motions were filed and heard after the deadline. Plaintiff filed a Motion to Compel (ECF No. 39) on December 1, 2017, and a Second Motion to Compel (ECF No. 42) on December 11, 2017, seeking responses to Plaintiff's Request for Production of Documents and Third Request for Production of Documents, respectively. A hearing was held on Plaintiff's motions on February 14, 2018, by Magistrate Susan Collins. The docket indicates that, following argument on the motions, the parties came to an "agreement to limit discovery requests and to terms of document production," thus mooting the motions.

On May 24, 2018, Plaintiff filed his Third Motion to Compel (ECF No. 57). In that motion, Plaintiff advised the Court that, despite previously agreeing to provide certain mortality medical charts subject to one or both of Plaintiff's earlier motions to compel, Defendants were now demanding $176,000.00 to produce 175 charts. Plaintiff sought an order from the Court requiring Defendants to produce the agreed-upon materials. Defendants responded on June 7, 2018. (ECF No. 60). Rather than address the cost issue, Defendants argued that the requested charts were privileged and irrelevant, and that the requests for production of documents were unduly burdensome. Defendants also filed a Motion to Strike Plaintiff's Third Motion to Compel (ECF No. 61) on June 7, 2018, arguing that Plaintiff's motion was untimely. Magistrate Collins again held a hearing on the parties' discovery dispute on July 27, 2018. The docket indicates that Plaintiff's Third Motion to Compel was granted and Defendants' Motion to Strike was denied "for the reasons stated on the record."

During the pendency of the Third Motion to Compel, Defendants filed their Motion for Summary Judgment and Designation of Evidence (ECF No. 70) and Memorandum of Law in Support (ECF No. 71) on July 23, 2018. Plaintiff filed his Response Brief in Opposition to

Defendants' Motion for Summary Judgment (ECF No. 83) and Designation of Evidence (ECF No. 84) on December 11, 2018. The parties also filed and briefed evidentiary issues as part of the summary judgment proceedings. (ECF Nos. 87–95).

This Court issued its Order and Opinion on Defendant's Motion for Summary Judgment (ECF No. 96) on March 27, 2019. This Court initially found that Plaintiff's claim was subject to the burden-shifting analysis created by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (*Id*. at 5). As such, Plaintiff was required to establish:

> (1) he is a member of a protected class; (2) he performed his job to his employer's expectations; (3) he suffered an adverse employment action; and (4) one or more similarly situated individuals outside his protected class received better treatment.

(*Id*. at 6). Plaintiff failed on both the second and fourth elements.

> The Plaintiff has not established the second element of his prima facie case. The Plaintiff argues that, because he had some of the lowest mortality rates of physicians at Parkview, he must therefore have been qualified to hold medical privileges. However, the Defendants decided not to renew the Plaintiff's hospital privileges at least in part because of issues unrelated to the Plaintiff's medical outcomes, including conducting rounds late at night and communication issues with nursing staff and Emergency Room personnel. The Plaintiff has not disputed the fact of his continued problems in these areas. The Plaintiff also does not contest the legitimacy of the standards to which the Defendant held him.
>
> The Plaintiff's argument as to the fourth element suffers from a similar problem. The Plaintiff presents evidence that he was a superior cardiologist, based on record outcomes from procedures performed by Caucasian cardiologists, whom the Plaintiff maintains did not lose their medical privileges as he did. However, the Plaintiff is again failing to respond to the Defendant's articulated reasons for the termination of his medical privileges: the Plaintiff had documented problems with timely rounding and availability during call. Thus, the doctors the Plaintiff identifies are not valid comparators, because they did not have the same problems in performance. Because he has not presented evidence regarding instances of comparable misconduct, the Plaintiff cannot claim that he engaged in similar conduct, but nonetheless received disparate treatment for no apparent legitimate reason.

(*Id*. at 7–8).

This Court further concluded that, even had Plaintiff satisfied his burden under *McDonnell Douglas*, his claim would still fail. Plaintiff failed to designate any evidence demonstrating that the adverse employment action against him was due to his race. Notably, Plaintiff himself offered a race-neutral reason for his termination which, in and of itself, defeated his claim under the "but-for standard required for § 1981 claims." (*Id*. at 10).

This Court did not reach the merits of Plaintiff's state law claims. Rather, "considering judicial economy, convenience, fairness, and comity," the Court dismissed those claims without prejudice to enable Plaintiff to refile those claims in an Indiana state court. (*Id*. at 10–12). Plaintiff re-filed his state law claims in the Allen County Superior Court on March 28, 2019.

**B.** **Legal Analysis**

**1.** *Costs under Fed. R. Civ. P. 54(d)*

Defendants first ask that this Court award them $3,810.98 in costs, representing Defendants' payments to secure the deposition transcripts in this matter. Defendants assert that they are entitled to these costs under Fed. R. Civ. P. 54(d) since they were the "prevailing party."

"Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Beamon v. Marshall & Ilsley Tr. Co*., 411 F.3d 854, 864 (7th Cir. 2005). This presumption "is difficult to overcome" and therefore, "the district court's discretion is narrowly confined—the court must award costs unless it states good reasons for denying them." *Weeks v. Samsung Heavy Indus. Co*., 126 F.3d 926, 945 (7th Cir. 1997). Generally, only the losing party's inability to pay or misconduct

4

by the prevailing party worthy of a penalty will suffice to justify denying costs. *Bonds v. Fizer*, 69 F. Supp. 3d 799, 803 (N.D. Ill. 2014).

For the purposes of Rule 54, a party is deemed "prevailing" if it prevails as to a substantial part of the litigation. *Testa v. Village of Mundelein, Ill.*, 89 F.3d 443, 447 (7th Cir. 1996). In a case with mixed results, the district court has the discretion to determine whether a party meets that standard. *Gavoni v. Dobbs House, Inc.*, 164 F.3d 1071, 1075 (7th Cir. 1999); *Testa*, 89 F.3d at 447; *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 641 (7th Cir. 1991).

The question of whether Defendants are a "prevailing party" for the purposes of Rule 54(d) does not appear to be in dispute. Defendants obtained judgment in their favor on Plaintiff's sole federal claim and the remaining state law claims were dismissed. The net effect of Defendants' summary judgment victory is that there is no federal lawsuit remaining. The Court concludes that this constitutes success as to a substantial part of the litigation before this Court, and Plaintiff does not seriously argue to the contrary. *See Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 220 (7th Cir. 1988) ("no question" party obtaining summary judgment on federal law claim and dismissal of pendent state law claims was prevailing party).

Because Defendants qualify as the prevailing party in this matter, this Court presumes that they are entitled to properly taxable costs. The costs a district court may tax are set forth in 28 U.S.C. § 1920. Subsection (2) of § 1920 permits this Court to tax "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Defendants' request for costs representing their payments for deposition transcripts are taxable, and the Court must start from a presumption that they are entitled to those costs.

5

Plaintiff attempts to overcome this presumption not by arguing one of the exceptions identified in *Bonds*, supra, but instead by arguing that his state law claims continue in state court. According to Plaintiff, "[i]t could be fundamentally unfair to award Defendants costs for depositions that relate to all of Dr. Apuri's claims based on the premise that Defendants prevailed on one of these claims." (ECF No. 100 at 5). Defendants respond that this is not a basis to deny fees, and counter that most of the depositions dealt with Plaintiff's federal law claim. (ECF No. 111 at 3).

The Court concludes that Plaintiff's argument is more persuasive. As Plaintiff notes, Defendants' claim for costs related to all deposition transcripts would be more compelling if they had prevailed on the merits on all Plaintiff's claims. However, all of Plaintiff's state law claims survived summary judgment, and continue to pend in an Indiana state court. The Court presumes that Defendants continue to use those transcripts in their defense of the state law claims. While the parties dispute the percentage of the depositions devoted to the individual claims, there is little doubt that much of the deposition testimony is broadly applicable to all Plaintiff's claims. The Court concludes that Defendants are entitled to a portion, but not all, of the claimed fees. *See Charter Med. Corp. v. Cardin*, 127 F.R.D. 111, 114 (D. Md. 1989) (prevailing party not entitled to costs for depositions used in related litigation).

Defendants' documentation of its costs does little to inform the Court's analysis of the appropriate amount of costs. There is no indication or explanation as to which depositions were necessary to the federal claims vis-à-vis the state law claims, how the depositions were necessary for the successful resolution of the case, or what percentage of the claimed costs are related to their success on the federal claim. What the Court can do is make the observation that these transcripts are being used in two different cases, suggesting that an even split in the cost of those transcripts

is appropriate. Therefore, the Court concludes that Defendants are entitled to costs in the amount of $1,905.49.

**2.      *Attorney Fees under 42 U.S.C. § 1988***

Separate from their claim for costs, Defendants seek attorney's fees in the amount of $91,610.00, which represents their attorney's fees from the date of the close of discovery to the entry of judgment in their favor. Defendants argue that, as of the close of discovery, "the evidence showed that Dr. Apuri could not establish a *prima facie* case to support his claim of race discrimination (yet he continued litigating)." (ECF No. 99 at 6).

Title 42, U.S.C. § 1988(b) provides, in pertinent part, that "[i]n any action or proceeding to enforce a provision of . . . [42 U.S.C. § 1981] . . . , the court, in its discretion, may allow the prevailing party[1], other than the United States, a reasonable attorney's fee as part of the costs." The Supreme Court has held that a prevailing defendant may recover attorney's fees under § 1988 if the plaintiff's action is "frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so." *Hughes v. Rowe*, 449 U.S. 5, 15 (1980) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)); *see also Leffler v. Meer*, 936 F.2d 981, 986 (7th Cir. 1991). Defendants are not required to show either subjective or objective bad faith on the part of the plaintiff in order to recover § 1988 attorney's fees. *Hamer v. Cty. of Lake*, 819 F.2d 1362, 1366 (7th Cir. 1987) (citation omitted). Instead, the defendant must demonstrate that the plaintiff's action is "meritless in the sense that it is groundless or without foundation." *Hughes*, 449 U.S. at 14. "[W]hen a civil rights suit is lacking in any legal or factual basis . . . , an award of fees to the defendant is clearly appropriate to deter frivolous filings and to ensure that the ability

---

[1] Plaintiff does not challenge Defendants' assertion that they are "prevailing parties" under 42 U.S.C. § 1988, instead arguing that his claim was not frivolous. (ECF No. 100 at 6–9). While the Court believes that this is a closer question than Defendants' status under Fed. R. Civ. P. 54(d), *see Baggs v. City of South Pasadena*, 958 F. Supp. 586, 588 (M.D. Fla. 1997), it will not deny fees on a basis not argued by Plaintiff.

7

of the courts to remedy civil rights violations is not restricted by dockets crowded with baseless litigation." *Coates v. Bechtel*, 811 F.2d 1045, 1050 (7th Cir. 1987) (citation omitted).

Although Defendants seek all attorney's fees from the close of discovery forward, Defendants appear particularly aggrieved by having to address Plaintiff's various requests for information that would form the basis for Plaintiff's three motions to compel. Defendants repeatedly note Plaintiff's pursuit of "irrelevant" information, including the medical records and charts for patients of other cardiologists. The problem with Defendants' protestations is that they have already lost the debate over the relevance of Plaintiff's discovery. Plaintiff's first and second motions to compel were resolved by agreement following hearing, with Defendants apparently agreeing to produce at least some of the claimed documents, and the third was granted by the Court. The Court fails to see how Plaintiff's court-approved discovery supports Defendants' claims for fees. *See Miller v. Dugan*, 764 F.3d 826, 832 (8th Cir. 2014) (reducing fee award where discovery motions were resolved in favor of non-prevailing party).

The discovery issue aside, it is true that Plaintiff's federal claim was resolved against him via summary judgment. Although a ruling on a motion for summary judgment is not conclusive proof of the frivolous nature of a litigant's case, it is a relevant consideration. *Thomas v. First Fed. Sav. Bank of Ind.*, 659 F. Supp. 421, 424 n.3 (N.D. Ind. 1987). However,

> it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable.

*Christiansburg*, 434 U.S. at 421–22.

Summary judgment is the moment in a lawsuit "when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). As such, the Court concludes that Plaintiff's summary judgment filings represent his best evidence, and therefore the best place to go in determining the merits of Plaintiff's case. That evidence shows:

- Plaintiff, a cardiologist of Indian descent, had held privileges at all local hospitals, including Parkview, from the early 2000s through 2014;

- In 2010 or 2011, Plaintiff was involved in a verbal altercation with Defendant Robertson at Parkview where Plaintiff was told, "this is the beginning of your end in this town;"

- Plaintiff reported the verbal altercation to Parkview, but no action was taken;

- In 2009, Defendant Robertson referred to a patient as "that black guy;"

- Following the altercation with Defendant Robertson, Plaintiff became the subject of peer review activity at Parkview for the first time in over a decade;

- Defendant Robertson participated in the peer review process by submitting information to Parkview regarding Plaintiff's "medical practice, clinical/technical skills, professional judgment and quality of care issues;"

- Plaintiff's privileges at Parkview's All County hospitals were non-renewed as of October 31, 2014, and that decision was upheld through Parkview's appeal processes;

- Plaintiff continued to enjoy practice privileges at Parkview's LaGrange Hospital, and those privileges were renewed on October 31, 2016;

- At the time Plaintiff's privileges were non-renewed, several Caucasian cardiologists had worse patient outcomes than Plaintiff, and Plaintiff had lower mortality rates than almost every other cardiologist that enjoyed privileges at Parkview; and

- None of the Caucasian cardiologists were subject to peer review resulting in the termination of their privileges.

(ECF No. 83 at 3–8).

The Court has already concluded that the foregoing evidence failed to establish a *prima facie* case of discrimination, and that even if it had Plaintiff could not demonstrate that Defendants' stated reason of the non-renewal of privileges was pretext. (ECF No. 96 at 7–10). Nothing in this Opinion and Order changes that conclusion. However, the Court does not believe that these facts are so paltry as to render Plaintiff's case frivolous, unreasonable, or groundless. While this Court found that Plaintiff's deficiencies in conducting rounds and communicating with staff permitted Defendants to conclude that he was unqualified to hold privileges, it was not unreasonable for Plaintiff to believe that his low mortality rates would lead to a different conclusion. *See Wohl v. Spectrum Mfg., Inc.*, 94 F.3d 353, 358 (7th Cir. 1996) (plaintiff can establish, for purposes of *prima facie* case, that he satisfied employer's legitimate expectations through his own description of his work performance). Similarly, while this Court found that other cardiologists were not proper comparators due to differences in prior performance issues, it was not unreasonable for Plaintiff to believe that other cardiologists practicing at the same hospital could be sufficiently similar to him so as to count as comparators. *See Coleman v. Donahoe*, 667 F.3d 835, 851–52 (7th Cir. 2012) ("Demanding nearly identical comparators can transform this evidentiary 'boost' into an insurmountable hurdle."). Finally, although this Court found that Plaintiff's evidence did not contradict Defendants' stated reasons for the non-renewal or demonstrate racial bias, the Court again finds that Plaintiff could have reasonably believed that he had adduced sufficient circumstantial evidence of discrimination. *See Rudin v. Lincoln Land Comm. Coll.*, 420 F.3d 712, 720–21 (7th Cir. 2005) (noting that circumstantial evidence of discrimination can consist of

"suspicious timing, ambiguous statements oral or written, behavior towards or comments directed toward other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn.") (quoting *Troupe v. May Dep't Stores*, 20 F.3d 734, 736 (7th Cir. 1994).

The Court also finds that the litigation activities in this case undermine Defendants' argument of frivolity. Take, for instance, the Defendants' summary judgment filings. The memorandum in support of the motion is twenty-five pages long and took nearly forty attorney hours to draft. (ECF No. 71 at 2-9; ECF No. 111-1). Defendants designated 1,091 pages of evidence in support of the Motion for Summary Judgment (ECF No. 72). Defendants' Reply in Support of Motion for Summary Judgment was another sixteen pages long and took nearly thirty attorney hours to prepare. (ECF Nos. 89, 111-1). Defendants' summary judgment filings were significant legal undertakings. Surely, if Plaintiff's case was "groundless or without foundation," this kind of effort would not be necessary.

The Court also notes[2] that these same parties have indicated to the Allen Superior Court that they "may request that the Court conduct a trial on an issue or issues agreed upon by the parties" in the state court case. *Apuri v. Parkview Health Sys., Inc.*, Allen County, Indiana Superior Court Cause No. 02D01-1903-PL-112, Order or Judgment of the Court dated January 9, 2020. If "the exact same racial animus allegations" (ECF No. 111 at 8) require a trial in state court, it is hard to understand how they can be frivolous here.

In summary, the Court finds that, while Plaintiff could not survive summary judgment, his case was not frivolous, unreasonable, or groundless. *See*, *e.g.*, *Cooney v. Casady*, 735 F.3d 514,

---

[2] Orders from the state court are public records and appropriate subjects of judicial notice. *In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018).

522 (7th Cir. 2013). Accordingly, Defendants are not entitled to attorney's fees under 42 U.S.C. § 1988.

**C.     Conclusion**

For the foregoing reasons, this Court ORDERS the Clerk of this Court to tax costs in favor of Defendants and against Plaintiff in the amount of $1,905.49. Defendant's Petition for Defense Costs and Attorney Fees (ECF No. 98) is DENIED in all other respects.

SO ORDERED on January 23, 2020.

                                       s/ Holly A. Brady
                                       JUDGE HOLLY A. BRADY
                                       UNITED STATES DISTRICT COURT